Lawrence M. YACUBIAN, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civil Action No. 12–11393–JLT.

United States District Court, D. Massachusetts.

July 8, 2013.

Zachary R. Gates, David C. Lashway, Paul T. Muniz, Burns & Levinson LLP, Boston, MA, Neil K. Gilman, Jonathan H. Lasken, Hunton & Williams LLP, Washington, DC, for Plaintiff.

Anton P. Giedt, United States Attorney's Office, Boston, MA, for Defendant.

## MEMORANDUM

TAURO, District Judge.

### I. *Introduction*

Lawrence M. Yacubian ("Plaintiff") bring this suit against the United States ("Defendant") for malicious prosecution and abuse of process under the Federal Tort Claims Act ("FTCA"). Defendant has moved to dismiss both counts. For the reasons set forth below, Defendant's *Motion to Dismiss* [# 17] is ALLOWED.

### II. *Factual Background* [1]

Plaintiff was a scallop fisherman and the owner of the fishing vessel ("F/V") Independence. On December 4, 1998, Plaintiff began a fishing trip. During the trip, Coast Guard Officers Timothy Brown and Chris Mooradian tracked the F/V Independence to determine if Plaintiff was fishing in prohibited areas.

On December 11, 1998, Brown led a team of Coast Guard Officers on a routine boarding of the F/V Independence. While on board, Brown asked Plaintiff to estimate the amount of scallops on board his vessel. Plaintiff made clear that he had no way of knowing the exact amount. Plaintiff then provided an estimate. Brown made an estimate that was higher than Plaintiff's estimate. Brown later wrote up

---

**1.** The court presents the facts contained in the *Complaint* [# 1] in the light most favorable to Plaintiff.

a report of the boarding. In his report, Brown did not state that he suspected Plaintiff of intentionally making a false statement.

On June 14, 2000, National Oceanic and Atmospheric Administration ("NOAA") Enforcement Attorney ("EA") Charles Juliand issued Plaintiff a notice of violation and assessment ("NOVA") and a notice of permit sanction ("NOPS"). Others involved in the investigation and prosecution include: EA Mitch MacDonald; Special Agent in Charge at NOAA ("SAC") Andy Cohen; Special Agent Louis Jachimcyzk; Coast Guard Officer Timothy Brown; and Coast Guard Officer Chris Mooradian. The NOVA assessed a fine of $250,000 for two counts of fishing in a restricted area and one count of making a false statement. The NOPS revoked Plaintiff's vessel permit and operator permit.

Plaintiff requested an administrative hearing on the NOVA/NOPS. During the proceedings, EA Juliand was uncharacteristically unwilling to negotiate a settlement. Administrative Law Judge ("ALJ") Edwin Bladen held a hearing on Plaintiff's NOVA/NOPS from June 19, 2001 through June 22, 2001. Plaintiff had subpoenaed Officer Peter Hanlon to testify as to the accuracy of the Boatracs system used to track Plaintiff's vessel. SAC Cohen pressured Hanlon not to testify. On December 5, 2001, ALJ Bladen entered an order imposing the same NOVA/NOPS sanctions originally imposed by EA Juliand.

On August 1, 2003, Plaintiff appealed ALJ Bladen's decision to the United States District Court for the District of Massachusetts. The district court found a lack of evidence to support the false statement charge and vacated liability as to that charge. The district court affirmed liability as to the incursion charges but vacated the penalties as excessive. On November 29, 2004, the district court remanded the case to NOAA for a *de novo* determination of the penalties.

On remand, ALJ Parlen McKenna granted EA Juliand's motion for an expedited hearing and reinstated the NOVA/NOPS while the case was pending, in violation of the district court's order. Plaintiff then attempted to sell the F/V Independence to cover his ongoing expenses in the case. On three separate occasions, Plaintiff lined up potential buyers and EA Juliand blocked the sale of Plaintiff's boat. On June 27, 2005, unable to sell his boat and in a desperate financial situation, Plaintiff was forced to settle the case.

The settlement included a $430,000 civil penalty, a $25,972.26 forfeiture, permanent revocation of Plaintiff's operator permit, and the forced sale of Plaintiff's vessel permit. The settlement agreement explicitly stated that the sale of the F/V Independence was contingent on Plaintiff agreeing to a settlement. The penalties imposed in the settlement were above those imposed in the original NOVA/NOPS, above those found excessive by the district court, and above the maximum fines allowable by NOAA's penalty schedule at the time.

Several years after Plaintiff's settlement, the United States Office of the Inspector General ("OIG") began an investigation of past NOAA prosecutions. During this investigation, NOAA attempted to cover up its actions. On September 23, 2010, the OIG issued its final report, finding that NOAA had assessed excessive fines to force settlements in a number of cases. The report also identified several cases, including Plaintiff's, for further review. The government appointed the Honorable Charles B. Swartwood III as Special Master to review these cases.

In April 2011, Special Master Swartwood issued his report. He found that (1) SAC Cohen's conduct in pressuring Hanlon not to testify was inappropriate, (2) NOAA's motivating objective in Plaintiff's case was money and, (3) NOAA had coerced Plaintiff to settle. It was not until Special Master Swartwood's April 2011 report that Plaintiff became aware that NOAA prosecuted him with malice and abused process.

On January 19, 2012, Plaintiff presented his claims for malicious prosecution and abuse of process to the United States Coast Guard and the United States Department of Commerce. On February 2, 2012, the Coast Guard sent Plaintiff a letter denying his claims. The Department of Commerce effectively denied Plaintiff's claims by failing to respond within six months.

On July 30, 2012, Plaintiff filed a complaint in this court. In Count I, Plaintiff claims that government employees abused process for the ulterior purposes of (1) gaining NOAA money to which it was not entitled, and (2) furthering the employees' career ambitions. In Count II, Plaintiff claims that government employees maliciously prosecuted the false statement charge. On October 11, 2012, Defendant moved to dismiss both counts under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### III. Legal Standard

A court may resolve a Rule 12(b)(1) motion in one of two ways. First, where the defendant challenges the legal sufficiency of the plaintiff's jurisdictional allegations, the court may resolve the challenge based on the face of the complaint.[2] In doing so, the court must take all well-pleaded facts as true and indulge all reasonable inferences in favor of the plaintiff.[3] Alternatively, where the defendant challenges the factual basis for subject matter jurisdiction, the court may consider evidence outside of the complaint.[4]

In deciding a Rule 12(b)(6) motion to dismiss, the court must determine whether the complaint alleges sufficient facts "to state a claim to relief that is plausible on its face."[5] In making this determination, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.[6]

### IV. Discussion

 Plaintiff brings two claims against Defendant under the FTCA for malicious prosecution and abuse of process. To prevail on a malicious prosecution claim, a plaintiff must prove that the defendant: (1) instituted proceedings against him (2) with malice and (3) without probable cause, and (4) that the proceedings terminated in favor of the accused.[7] To prevail on an abuse of process claim, a plaintiff must prove that the defendant: (1) used process (2) for an ulterior or illegitimate purpose, (3) resulting in damage.[8]

2. *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir.2001).

3. *Id.* (citing cases).

4. *Id.*

5. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

6. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

7. *Limone v. United States*, 579 F.3d 79, 89 (1st Cir.2009) (citing *Correllas v. Viveiros*, 410 Mass. 314, 572 N.E.2d 7, 10 (1991)).

8. *Jones v. Brockton Pub. Mkts., Inc.*, 369 Mass. 387, 340 N.E.2d 484, 485 (1975).

Defendant advances several arguments for dismissal, including (1) the statute of limitations has run,[9] (2) the intentional torts exception to the FTCA bars Plaintiff's claims,[10] (3) Plaintiff fails to allege that any investigative or law enforcement officer "instituted proceedings,"[11] and (4) Plaintiff fails to allege that any investigative or law enforcement officer "used process."[12] The court addresses each of these arguments in turn.

## A. *Statute of Limitations*

■ The FTCA provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues."[13] "An FTCA claim generally accrues at the time of the injury."[14]

At the latest, Plaintiff's claims accrued on June 27, 2005, when the parties entered into the allegedly excessive settlement. Because Plaintiff presented his claims to the United States Coast Guard and Department of Commerce six years later, his claims are now time-barred.

■ The discovery rule does not save Plaintiff's claims. The discovery rule applies where "either the injury itself or its cause is not readily apparent."[15] Under the discovery rule, a claim accrues when a plaintiff knows or should know of: (1) his injury, and (2) "the causal connection between the government and [his] injury."[16]

Here, Plaintiff knew of his injuries and the government's role in causing his injuries at the time the underlying events occurred. As a result, the discovery rule does not apply to extend the date of accrual in this case.

■ Plaintiff argues for a different interpretation of the discovery rule. In particular, Plaintiff argues that his claims did not accrue until he knew, or had reason to know, of every element of his claims. Plaintiff argues that he did not know or have reason to know that the relevant government employees acted with malice and with the ulterior purpose of coercing an excessive settlement until April 2011 when Special Master Swartwood issued a report with these findings.

Even if this court were to accept Plaintiff's interpretation of the discovery rule, his claims would still be untimely. Taking the allegations in the complaint as true, Plaintiff knew sufficient facts to infer malice and an ulterior purpose more than two years before he filed his administrative claims. In particular, Plaintiff knew that: (1) the NOVA/NOPS penalties were excessive, (2) the false statement charge was groundless and lacked probable cause, (3) SAC Cohen pressured Plaintiff's key witness not to testify, (4) the district court confirmed that the NOVA/NOPS penalties were excessive and the false statement charged lacked support, (5) EA Juliand

9. Def.'s Mem. Supp. Mot. Dismiss 10–18 [# 18]; Def.'s Reply 2–5 [# 26].

10. Def.'s Mem. Supp. Mot. Dismiss 18–19 [# 18].

11. Def.'s Mem. Supp. Mot. Dismiss 19, 21–22 [# 18]; Def.'s Reply 5–6 [# 26].

12. Def.'s Mem. Supp. Mot. Dismiss 19–20 [# 18]; Def.'s Reply 5–6 [# 26].

13. 28 U.S.C. § 2401(b).

14. *Donahue v. United States*, 634 F.3d 615, 623 (1st Cir.2011) (citing *McIntyre v. United States*, 367 F.3d 38, 51 (1st Cir.2004); *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir.2002)).

15. *Id.*

16. *Id.* (quoting *Callahan v. United States*, 426 F.3d 444, 451 (1st Cir.2005)); *Skwira v. United States*, 344 F.3d 64, 78 (1st Cir.2003).

sought to reinstate the excessive NOVA/ NOPS in violation of the district court's orders, (6) EA Juliand blocked Plaintiff from selling his boat three times to coerce a settlement, and (7) EA Juliand strong-armed Plaintiff into settling for penalties above the statutory maximum penalties and above the original NOVA/NOPS penalties that the district court found excessive.

From these facts, Plaintiff could have inferred that NOAA employees acted with malice and with an ulterior purpose of coercing an excessive settlement. In fact, the terms of the settlement and EA Juliand's conduct in repeatedly blocking the sale of Plaintiff's boat, standing alone, were sufficient to infer an ulterior purpose. Plaintiff did not need conclusive proof in order to file his administrative claims.[17] While the Special Master's report may have strengthened Plaintiff's claims, the report was not necessary for Plaintiff's claims to accrue.

Accordingly, Plaintiff's claims are dismissed as time-barred. As the application of the discovery rule in this context is less than perfectly clear,[18] the court proceeds to analyze Defendant's alternative grounds for dismissal.

### B. *Alternative Grounds for Dismissal*

#### 1. *Juliand & MacDonald: Intentional Torts Exception to the FTCA*

The United States has sovereign immunity from suit, except where such immunity is waived.[19] The FTCA contains a general waiver of sovereign immunity. It subjects the United States to liability for the "wrongful act or omission" of any government employee "while acting within the scope of his office or employment."[20]

The FTCA contains a number of statutory exceptions to its waiver of sovereign immunity. Under the intentional torts exception, the United States has immunity for malicious prosecution and abuse of process claims, except where the underlying tortious conduct was committed by an "investigative or law enforcement officer."[21] The FTCA defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."[22] Federal prosecutors do not fit within the definition of "investigative or law enforcement officers."[23]

---

**17.** *Donahue*, 634 F.3d at 627 ("In all events, one need not have irrefutable proof of the government's accountability in order to file an administrative claim; it is enough to have 'possession of sufficient information for the agency to investigate the claim.'" (citation and quotation marks omitted)); *Skwira*, 344 F.3d at 81 ("One does not have to be certain of *actionability* in order to submit an administrative claim.").

**18.** *Cutting v. United States*, 204 F.Supp.2d 216, 224 (D.Mass.2002) ("The issue of precisely how much knowledge is needed to trigger accrual bedevils discovery rule analysis.").

**19.** *Skwira*, 344 F.3d at 72 (citing *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980)).

**20.** 28 U.S.C. § 1346(b)(1).

**21.** 28 U.S.C. § 2680(h).

**22.** *Id.*

**23.** *See, e.g., Vander Zee v. Reno*, 100 F.3d 952, at *4 n. 2 (5th Cir.1996) (unpublished) ("[T]hose courts that have considered the question have concluded that prosecuting attorneys are not 'law enforcement officers' within the meaning of this section."); *Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994); *Nogueras–Cartagena v. United States*, 172 F.Supp.2d 296, 314 (D.P.R.2001) ("It is well established that the conduct of federal prosecutors may not serve as basis for malicious prosecution, false arrest and abuse of process claims against the United States.... U.S. Attorneys are not 'investigative or law

■ Defendant claims immunity from Plaintiff's malicious prosecution and abuse of process claims arising from the conduct of EA Juliand and EA MacDonald. Defendant argues that Juliand and Mac-Donald are both NOAA Enforcement Attorneys who do not qualify as "investigative or law enforcement officers." In support of its argument, Defendant provides an excerpt from the NOAA Organization Handbook containing the delegation of authority to NOAA Enforcement Attorneys at the time of the alleged tortious conduct.[24] This excerpt indicates that Juliand and MacDonald did not have the power to execute searches, seize evidence, or make arrests. Plaintiff does not dispute Defendant's argument or allege otherwise in his complaint. Accordingly, Plaintiff's malicious prosecution and abuse of process claims based on the conduct of Juliand and MacDonald are dismissed under the intentional torts exception to the FTCA.

### 2. *Remaining Officers: Institution of Proceedings & Use of Process*

■ To survive dismissal of his malicious prosecution claim, Plaintiff must plausibly allege that an investigative or law enforcement officer "instituted pro-

ceedings" as to the false statement charge.[25] Typically, an individual "institutes proceedings" by filing a civil complaint or swearing out a criminal complaint.[26] "But malicious prosecution is by no means restricted to this paradigm."[27] An individual may also "institute proceedings" by inducing or causing another person to file a complaint or press charges.[28] "[I]f an individual either exercises a peculiar degree of control over the charging official or adamantly presses that official to bring a criminal complaint, he may be held responsible for the institution of the prosecution."[29] Additionally, the Supreme Judicial Court has left open the possibility that an individual who did not "institute proceedings" may be liable for malicious prosecution for "continuing" (or inducing another to continue) a prosecution after it becomes apparent that there is no probable cause.[30]

■ To survive dismissal of his abuse of process claim, Plaintiff must plausibly allege that an investigative or law enforcement officer "used process." "Process" refers to "the papers issued by a court to bring a party or property within its jurisdiction."[31] There are three categories of process under Massachusetts law: (1) writs of attachment, (2) "the pro-

---

enforcement officers' for purposes of § 2680(h)." (citing *Wright v. United States*, 719 F.2d 1032, 1034 (9th Cir.1983))).

24. Def.'s Mot. Dismiss Ex. E [# 18–5].

25. Plaintiff cannot pursue a malicious prosecution claim for the incursion charges as the incursion charges did not terminate in Plaintiff's favor. Rather, the district court affirmed liability on the incursion charges and the parties settled the penalties on remand.

26. *See Limone v. United States*, 579 F.3d 79, 89 (1st Cir.2009); Restatement (Second) of Torts § 674 cmt. a (1977).

27. *Limone*, 579 F.3d at 89.

28. *Id.; Correllas v. Viveiros*, 410 Mass. 314, 572 N.E.2d 7, 10 (1991).

29. *Limone*, 579 F.3d at 89 (citing cases).

30. *Id.* at 91; Restatement (Second) of Torts §§ 655, 674 (1977).

31. *Jones v. Brockton Pub. Mkts., Inc.*, 369 Mass. 387, 340 N.E.2d 484, 486 (1975).

cess used to institute a civil action," and (3) "the process related to the bringing of criminal charges."[32] Massachusetts courts define the "use" of process as "causing" these papers to issue.[33]

Plaintiff fails to allege that any investigative or law enforcement officer "instituted proceedings" or "used process." The only "process" referred to in the complaint is the NOVA/NOPS.[34] Plaintiff alleges that EA Juliand issued the NOVA/NOPS and prosecuted the case. As discussed above, Defendant has sovereign immunity for EA Juliand's conduct. Plaintiff does not allege that any of the investigative or law enforcement officers named in the complaint induced or caused EA Juliand to issue the NOVA/NOPS.[35] Nor does Plaintiff allege that any of these officers exercised control or influence over EA Juliand's decisions in prosecuting the case.[36]

Because Plaintiff fails to allege that any investigative or law enforcement officer "instituted proceedings" or "used process," Plaintiff's claims are dismissed.

## V. Conclusion

In sum, Plaintiff's malicious prosecution and abuse of process claims are dismissed as untimely. Alternatively, Plaintiff's claims are dismissed because Plaintiff fails to allege that any investigative or law enforcement officer "instituted proceedings" or "used process." Defendant's *Motion to Dismiss* [# 17] is ALLOWED.

AN ORDER HAS ISSUED.

## *ORDER*

For the reasons set forth in the accompanying memorandum, Defendant's *Mo-*

---

**32.** *Id.; Alphas Co., Inc. v. Kilduff,* 72 Mass. App.Ct. 104, 888 N.E.2d 1003, 1013 (2008).

**33.** *Vittands v. Sudduth,* 49 Mass.App.Ct. 401, 730 N.E.2d 325, 332 n. 9 (2000) ("More precisely the word 'process' in the context of abuse of process means causing papers to be issued by a court 'to bring a party or property within its jurisdiction.'" (quoting *Silvia v. Bldg. Inspector of W. Bridgewater,* 35 Mass. App.Ct. 451, 621 N.E.2d 686, 687 n. 4 (1993))).

**34.** It is unclear under Massachusetts law whether the NOVA/NOPS constitutes "process." *See Chemawa Country Golf, Inc. v. Wnuk,* 9 Mass.App.Ct. 506, 402 N.E.2d 1069, 1071–72 (1980); *see also Cignetti v. Healy,* 967 F.Supp. 10, 18 (D.Mass.1997); *Powers v. Leno,* 24 Mass.App.Ct. 381, 509 N.E.2d 46, 48–49 (1987). This court need not decide the question as neither party has raised it in the briefs.

**35.** As to malicious prosecution see *Limone v. United States,* 579 F.3d 79, 89–91 (1st Cir. 2009) and *Correllas v. Viveiros,* 410 Mass. 314, 572 N.E.2d 7, 10 (1991). As to abuse of process see *Turkowitz v. Town of Province-*

town, No. 10–10634–NMG, 2010 WL 5583119, at *8–9 (D.Mass. Dec. 1, 2010); *Varrasso Const. Corp. v. Difazio,* No. 88–1455–Z, 1989 WL 99299, at *2 (D.Mass. Aug. 15, 1989); *MacLean v. Naumkeag Trust Co.,* 268 Mass. 437, 167 N.E. 748, 749 (1929); *Ferraro v. First Safety Fund Nat'l Bank,* 11 Mass.App. Ct. 928, 416 N.E.2d 225, 226 (1981); and *Mustapha v. Town of Methuen,* No. 96–2283, 1998 WL 77882, at *2 (Mass.Super. Feb. 20, 1998). Cf. *Gutierrez v. Mass. Bay Transp. Auth.,* 437 Mass. 396, 772 N.E.2d 552, 563–64 (2002) (holding that the officers' falsified arrest report could have encouraged the prosecution to bring process against the defendants).

**36.** See *Limone,* 579 F.3d at 91; *Leventhal v. Dockser,* 358 Mass. 799, 261 N.E.2d 64, 65 (1970); *Correllas,* 572 N.E.2d at 10. Plaintiff's only relevant allegations are: (1) the named officers were "involved" in the prosecution; and (2) SAC Cohen pressured Hanlon not to testify. Compl. ¶¶ 20, 33–44. Neither allegation plausibly suggests that any of the officers exercised the requisite degree of control over Juliand to render the officer a "continuer" of the prosecution. See *Limone,* 579 F.3d at 91.

*tion to Dismiss* [#17] is ALLOWED. THIS CASE IS CLOSED.

IT IS SO ORDERED.